TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00121-CR






Benito Belmares, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT

NO. D-1-DC-10-301302, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 A jury convicted appellant Benito Belmares of the offense of aggravated sexual
assault of a child. See Tex. Penal Code Ann. § 22.021 (West 2011). Punishment was assessed at
25 years' imprisonment. In a single point of error, Belmares asserts that the court's charge to the
jury erroneously defined the culpable mental states for the offense. We will affirm the judgment.


BACKGROUND

 In a three-count indictment, Belmares was charged with committing the offenses
of aggravated sexual assault of a child, indecency with a child by contact, and indecency with a
child by exposure. At trial, the jury heard testimony from several witnesses, including the victim,
10-year-old V.S.; Wendy Woodruff, a counselor at V.S.'s school to whom V.S. had first reported
the abuse; Sandra Espinosa Belmares, V.S.'s mother; and Amy Lynn Calloway, an employee of
the Children's Advocacy Center who had interviewed V.S. during the investigation. Belmares
testified in his defense and denied the allegations against him, claiming that the victim's outcry
was fabricated.

 The jury found Belmares guilty of aggravated sexual assault of a child as alleged in
count one of the indictment and assessed punishment as noted above. The district court sentenced
Belmares in accordance with the jury's verdict. This appeal followed.


STANDARD OF REVIEW

 We review claims of jury charge error under the two-pronged test set out in
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); Swearingen v. State,
270 S.W.3d 804, 808 (Tex. App.--Austin 2008, pet. ref'd). We first determine whether error exists.
Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); Swearingen, 270 S.W.3d at 808. If
error exists, we then evaluate the harm caused by the error. Ngo, 175 S.W.3d at 743; Swearingen,
270 S.W.3d at 808. The degree of harm required for reversal depends on whether that error was
preserved in the trial court. When error is preserved in the trial court by timely objection, the record
must show only "some harm." Almanza, 686 S.W.2d at 171; Swearingen, 270 S.W.3d at 808. By
contrast, unobjected-to charge error requires reversal only if it resulted in "egregious harm." See
Neal v. State, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).


ANALYSIS

 In his sole point of error, Belmares asserts for the first time on appeal that the
district court erroneously included in the jury charge the following definitions of the terms
"intentionally" and "knowingly":

A person acts intentionally, or with intent, with respect to the nature of his conduct
or to a result of his conduct when it is his conscious objective or desire to engage in
the conduct or cause the result.


A person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the nature
of his conduct or that the circumstances exist. A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his conduct
is reasonably certain to cause the result.


The above definitions, which track the full statutory definitions provided in the penal code,
encompass all of the conduct elements that may be involved in an offense. (1) See Tex. Penal Code
Ann. § 6.03(a), (b) (West 2011). Belmares argues that the definitions should have been limited
to include only the conduct elements that are applicable to the offense of sexual assault. See Cook
v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994) ("It is error for a trial judge to not limit the
definitions of the culpable mental states as they relate to the conduct elements involved in the
particular offense.").

 As the State observes in its brief, the law is unsettled on how the culpable mental
states should be defined in a sexual-assault charge. Some courts of appeals have concluded that a
full statutory definition is permissible because sexual assault is either a result-of-conduct offense
or combines both result-of-conduct and nature-of-conduct elements. See, e.g., Baker v. State,
94 S.W.3d 684, 690-91 (Tex. App.--Eastland 2002, no pet.) (concluding that offense of aggravated
sexual assault of child involves both result-of-conduct and nature-of-conduct elements and that
trial court did not err in defining intentionally and knowingly in terms of result-of-conduct); Murray
v. State, 804 S.W.2d 279, 280-81 (Tex. App.--Fort Worth 1991, pet. ref'd) (concluding that
trial court did not err in submitting full statutory definitions of intentionally and knowingly because
aggravated sexual assault had not yet been characterized as either "result-of-conduct" or "nature-of-conduct" offense); Saldivar v. State, 783 S.W.2d 265, 267-68 (Tex. App.--Corpus Christi 1989,
no pet.) (concluding that sexual assault is "result-of-conduct" offense and thus trial court did not
err in including "result-of-conduct" definition); see also Wagner v. State, No. 08-09-00021-CR,
2010 Tex. App. LEXIS 4087, at *12-16 (Tex. App.--El Paso May 28, 2010, pet. ref'd)
(not designated for publication) (concluding that trial court does not err by submitting full statutory
definitions of "intentionally" and "knowingly"); Hutson v. State, No. 05-09-00033-CR, 2009 Tex.
App. LEXIS 7873, at *13-14 (Tex. App.--Dallas Oct. 8, 2009, no pet.) (mem. op., not designated
for publication) ("When an offense, such as aggravated sexual assault, is not clearly a result-oriented
or a nature-of-the-conduct type offense, it is not error for the trial court to submit both in
its definitions of knowingly and intentionally."). However, this Court has recently held, in an
unpublished opinion, that because sexual assault is a "conduct" offense, it was error for a jury charge
to define "knowingly" in terms of the "result of conduct." See Ates v. State, No. 03-09-00501-CR,
2011 Tex. App. LEXIS 860, at *17-18 (Tex. App.--Austin Feb. 4, 2011, pet. ref'd) (mem. op. on
reh'g, not designated for publication). (2)

 Assuming without deciding that it was error for the jury charge to include the full
statutory definitions of "intentionally" and "knowingly," the fact remains that Belmares did not
object to the definitions at trial. Therefore, Belmares would not be entitled to reversal unless he was
egregiously harmed by those definitions. "Errors which result in egregious harm are those that affect
the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive
theory, or make a case for conviction clearly and significantly more persuasive." Taylor v. State,
332 S.W.3d 483, 490 (Tex. Crim. App. 2011). In other words, the error must have been so
harmful that Belmares was denied "a fair and impartial trial." Patrick v. State, 906 S.W.2d 481, 492
(Tex. Crim. App. 1995); Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); Almanza,
686 S.W.2d at 171. "In determining whether Appellant was deprived of a fair and impartial trial,
we review 'the entire jury charge, the state of the evidence, including the contested issues and weight
of probative evidence, the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.'" Taylor, 332 S.W.3d at 489 (quoting Almanza, 686 S.W.2d at 171).
Additionally, in assessing harm resulting from the inclusion of improper conduct elements in
the definitions of culpable mental states, we "may consider the degree, if any, to which the culpable
mental states were limited by the application portions of the jury charge." Patrick, 906 S.W.2d
at 493; Hughes v. State, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); Cook, 884 S.W.2d at 492 n.6. 

 In this case, although the district court gave the full statutory definitions of the
culpable mental states in the abstract portion of the charge, the court limited the scope of the
definitions in the application paragraph to the alleged conduct:


[I]f you believe from the evidence beyond a reasonable doubt that the defendant . . .
did then and there intentionally or knowingly cause the penetration of the sexual
organ of [V.S.], a child younger than 14 years of age and not his spouse, by the finger
of the said Benito Belmares, you will find the defendant guilty of the offense of
Aggravated Sexual Assault of a Child and so say by your verdict, but if you do not
so believe, or if you have a reasonable doubt thereof, you will acquit the defendant
of the offense of Aggravated Sexual Assault of a Child.



Thus, the jury was instructed that it could convict Belmares of aggravated sexual assault of a child
only if it found that he had intentionally or knowingly caused the penetration of the sexual organ of
V.S. This is consistent with the statutorily prohibited conduct. See Tex. Penal Code Ann. § 22.021.
When the application paragraph of the charge correctly instructs the jury on the law applicable to the
case, this mitigates against a finding of egregious harm. See Patrick, 906 S.W.2d at 493; Hughes,
897 S.W.2d at 296-97; Pitre v. State, 44 S.W.3d 616, 621 (Tex. App.--Eastland 2001, pet. ref'd).
Additionally, this was not a case in which intent was a contested issue at trial. Belmares's defense
was not that he had accidentally touched V.S. or that he lacked the requisite mens rea to commit the
charged offense. Instead, Belmares denied that the incident even occurred, and his theory during
trial was that the child's outcry was fabricated. Thus, throughout trial and during closing arguments,
the parties focused on the credibility of the victim and the defendant, not on whether Belmares
possessed the culpable mental states required to commit the offense. On this record, we cannot
conclude that the alleged charge error affected the very basis of the case, deprived the defendant of
a valuable right, vitally affected the defensive theory, or made a case for conviction clearly and
significantly more persuasive. See Saldivar, 783 S.W.2d at 268 ("Where no defense is presented
which would directly affect an assessment of mental culpability, there is no harm in submitting
erroneous definitions of 'intentionally' and 'knowingly.'"); see also Jones v. State, 229 S.W.3d 489,
494 (Tex. App.--Texarkana 2007, no pet.) ("[T]he intent of Jones in touching B.S.S., while it was
a part of the State's required proof, was not a contested issue and consequently Jones could not be
egregiously harmed by the definition of the intentional and knowing state of mind.").

 We overrule Belmares's sole point of error.


CONCLUSION

 We affirm the judgment of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: November 23, 2011

Do Not Publish
1. There are three possible conduct elements that may be involved in an offense: (1) the
nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the
conduct. McQueen v. State, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). "An offense may contain
any one or more of these 'conduct elements' which alone or in combination form the overall
behavior which the Legislature has intended to criminalize, and it is those essential 'conduct
elements' to which a culpable mental state must apply." Id. For example, murder is a result-of-conduct offense. Cook v. State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). Therefore, for that
offense, the court's charge should define the culpable mental states as they relate to the result of the
defendant's conduct, and it is error for the charge to define the culpable mental states in relation to
the other conduct elements. See id.
2. The court of criminal appeals has not squarely addressed this issue. The court has,
however, in the context of double-jeopardy and jury-unanimity cases, characterized sex offenses
as "conduct" or "nature-of-conduct" crimes. See Gonzales v. State, 304 S.W.3d 838, 847-48
(Tex. Crim. App. 2010); Huffman v. State, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008).