

# IN THE
# TENTH COURT OF APPEALS

—————————

### No. 10-18-00358-CR

—————————

ANTONIO T. TORRES,

                                                    Appellant

 v.

THE STATE OF TEXAS,

                                                    Appellee

—————————

**From the 413th District Court
Johnson County, Texas
Trial Court No. F50694**

—————————

## MEMORANDUM  OPINION

—————————

Appellant Antonio T. Torres was convicted by a jury of two counts of aggravated sexual assault of a child and one count of indecency with a child by sexual contact.  The jury assessed Torres's punishment at forty-five years' incarceration each on the aggravated sexual assault counts and twenty years' incarceration on the indecency count, all to be served concurrently.  In four issues, Torres challenges the sufficiency of the evidence on each count and asserts that the trial court erred in the definitions included in the jury charge.  We will affirm.

*Background*

Torres was indicted for sexually abusing one victim, identified by the pseudonym Becky Thomas,[1] on three separate occasions. The indictment charged that the three separate incidents occurred in January 2014 and December 2014 when Becky was less than fourteen years of age. Several witnesses testified at trial, including Becky, the girlfriend of Becky's biological father, who was an outcry witness, a forensic interviewer, and a sexual assault nurse examiner. Becky's outcry did not occur until over a year after the abuse allegedly occurred. There was no physical evidence of abuse nor any witnesses to the actual abuse other than Becky.

The testimony at trial reflects that "Larry," Becky's biological father, impregnated Becky's mother "Evie" when Evie was thirteen or fourteen years of age. Evie gave birth to Becky when Evie was fourteen. Larry has three convictions for aggravated sexual assault of a child under fourteen years of age, one of which involved Evie, and is a registered sex offender. Evie began a relationship with Torres when Becky was three or four years of age. Evie and Torres placed Torres's name on Becky's birth certificate even though Torres is not Becky's biological father. Evie had two more daughters with Torres before their relationship ended. In 2012, Evie introduced Becky to Larry and allowed her to spend significant time with him. The Department of Human Services removed Becky and her sisters from Evie and placed them with

---

[1] We use this pseudonym and assign pseudonyms to other individuals to protect the identity of the victim. *See* Tex. R. App. P. 9.10.

Torres's parents, who considered Becky one of their grandchildren. The Department required that all visits with the children by Evie, Torres or Larry be supervised. When the children were returned to Evie, she allowed Becky to resume visits with Larry. There was some indication that Evie allowed Becky to move in with Larry.

After the relationship with Torres ended, Evie began a relationship with "Gordon," who moved in with her and the girls. In 2015, Evie got into an altercation with Torres's mother after Evie and Gordon left Becky and her sisters alone while Evie and Gordon attended a concert. When the police investigated, Becky told the police that Gordon had threatened Evie with a gun, that there was marijuana in their house, and that Gordon sold marijuana. As a result of this incident, the Department opened another investigation into Evie and her children.

In the meantime, Torres was in jail for failure to pay child support. When Torres was released from jail, he observed Becky at Larry's house and told Becky that she was not supposed to be there. Shortly thereafter, Becky made an outcry to Larry's girlfriend that Torres had sexually abused Becky in the past. Becky was unclear as to the dates the abuse had occurred when she testified, but from the surrounding circumstances the abuse occurred prior to the time Torres was jailed for failure to pay child support. The incidents Becky described occurred while she was spending the night at Torres's parents' house.

Torres's defense was that Evie concocted the allegations against him and persuaded Becky to lie in order to forestall another investigation by the Department and so that Becky could continue visiting Larry, who was a more lenient parent. The implication from the questions directed at the witnesses was that if any abuse occurred, it was inflicted by Larry.

*Discussion*

A. Sufficiency. In his first three issues, Torres asserts that the evidence was insufficient on each count to sustain a conviction. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319, 99 S.Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and

circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

The elements of aggravated sexual assault of a child are found in § 22.021 of the Penal Code. *See* TEX. PENAL CODE ANN. § 22.021. As relevant to this case, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means or causes the mouth of a child to contact the sexual organ of another person, including the actor, and the victim is younger than fourteen years of age. *Id.* §§ 22.021(a)(1)(B), (a)(2)(B).

A person commits the offense of indecency with a child by sexual contact if the person intentionally or knowingly engages in sexual contact with a child younger than seventeen years of age or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1). "Sexual contact," as relevant to the charges in this case, includes the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1)

touching through clothing of any part of the  genitals of a child, and (2) touching any part of the body of a child with any part of the genitals of a person.  *See id*. § 21.11(c); *see also Carmona v. State*, 610 S.W.3d 611, 615 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Torres asserts that the evidence is insufficient to support his conviction on any of the counts of the indictment because "all the evidence presented at trial was either the testimony of [Becky] or statements previously made to others by [Becky].  There were no other witnesses to the alleged criminal conduct, no physical evidence, no medical evidence, or any other evidence to support [Becky's] allegations."  Torres further notes, "The only direct evidence presented is the testimony of [Becky] which is uncorroborated, inconsistent, and contradictory.  The conflicting statements and shifting stories made by [Becky] about the alleged criminal conduct combined with the illogical idea that this type of offense occurred in a small room with two other children present in the same small room and two adults in the next room makes her testimony void of any credibility."

> The uncorroborated testimony of a child victim can be sufficient to support a conviction.  *See* TEX. CODE CRIM. PROC. art. 38.07; *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding victim's testimony of penetration by defendant, standing alone, was sufficient).  Furthermore, the State has no burden to produce physical, medical, or other corroborating evidence.  *See Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  To the extent the lack of this or other evidence could serve to undermine the alleged victim's or any other witness's credibility, it was the jury's duty as the sole factfinder to assess the alleged victim's credibility and to resolve any conflicts in the evidence or testimony.  *See Zuniga*, 551 S.W.3d at 729.  We presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *See Jackson*, 443 U.S. at 326.  The jury determines the credibility

> of the witnesses and may believe all, some, or none of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

*Petty v. State*, No. 10-18-00243-CR, 2020 WL 7085287, at *5 (Tex. App.—Waco Dec. 2, 2020, pet. ref'd) (mem op., not designated for publication).

Based on its verdict, the jury was not persuaded by Torres's arguments and apparently found the victim's testimony to be credible. The victim testified about Torres committing each of the offenses in the manner alleged in the indictment, and Torres does not argue that she did not as to any one specific offense. The outcry witness, the SANE examiner, and the forensic interviewer testified that the victim told them how Torres committed each of the offenses alleged. After reviewing all of the evidence in the light most favorable to the jury's verdict, and giving due deference to the jury's weight and credibility determinations, we conclude that, on the evidence presented, a rational trier of fact could have found the essential elements of each of the offenses beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19. We overrule Torres's first three issues.

B. Jury Instructions. In his fourth issue, Torres argues that the trial court erred in failing to limit the definitions of the terms "intentionally" and "knowingly" in the jury charge. Specifically, Torres argues that the definitions of "intentionally" and "knowingly" in the abstract portion of the jury charge "contained both the nature-of-conduct language and result-of-conduct language as defined in the penal code," which erroneously permitted the jury to apply inappropriate portions of the definitions to the facts presented at trial. Torres did not object to the charge at trial.

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If error is found, the appellate court must analyze that error for harm. *Id*. If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Conversely, if error was not preserved at trial by a proper objection, as was the case here, a reversal will be granted only if the error caused *egregious* harm, meaning Torres did not receive a fair and impartial trial. *Id*. "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). The actual degree of harm must be assayed in light of the whole record, "including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information." *Jordan v. State*, 593 S.W.3d 340, 347 (Tex. Crim. App. 2020); *see also Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018); *Riggs v. State*, 482 S.W.3d 270, 273-74 (Tex. App.—Waco 2015, pet. ref'd). To obtain a reversal for jury-charge error, Torres must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012).

The State concedes that the trial court erred in failing to limit the definitions of "intentionally" and "knowingly" but argues that the error was harmless. Assuming without deciding that the trial court erred, a review of the record as a whole, "including the jury charge, contested issues, weight of the probative evidence, arguments of

counsel, and other relevant information," does not reflect that Torres suffered egregious harm. *Jordan*, 593 S.W.3d 347.

Weighing against Torres's argument is that the application paragraphs of the charge included the correct mental state required to find Torres guilty. The application paragraphs for each count specifically noted:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the Defendant, Antonio T. Torres, on or about the 1st day of January, 2014, in the County of Johnson and State of Texas, did then and there intentionally or knowingly cause the penetration of the sexual organ of Becky Thomas, a child who was then and there younger than 14 years of age, by the Defendant's finger, you will find the Defendant guilty of the offense of Aggravated Sexual Assault of a Child as charged in Count One of the indictment and so say by your verdict, . . . .

> With regard to Count Two and bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the Defendant Antonio T. Torres on or about the 1st day of December, 2014, in the County of Johnson, State of Texas, intentionally or knowingly caused the mouth of Becky Thomas, a child who was then and there younger than 14 years of age, to contact the sexual organ of said Defendant, you will find the Defendant guilty of the offense of Aggravated Sexual Assault of a Child as charged in Count Two of the indictment and so say by your verdict, . . . .

> With regard to Count Three and bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the Defendant, Antonio T. Torres, on or about the 1st day of January, 2014, in the County of Johnson and State of Texas, did then and there with the intent to arouse or gratify the sexual desire of the said Defendant, cause Becky Thomas, a child younger than 17 years of age, to engage in sexual contact by causing Becky Thomas to touch the genitals of said Defendant then you will find the Defendant guilty of the offense of Indecency with a Child by Sexual Contact as alleged in Count Three of the indictment and so say by your verdict, . . . .

"When the application paragraph correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm." *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995)). As in *Reed*, "this is not a case in which intent was a contested issue at trial." *Id*. Torres's defense was not that he accidentally touched Becky or that he lacked the requisite *mens rea* to commit the charged offenses, but that he did not commit the offenses at all.

> Instead, appellant denied that the incident even occurred, and his theory during the trial was that the child's outcry was fabricated. Consequently, throughout trial and during closing arguments, the parties focused on the credibility of the child victim, not on whether appellant possessed the culpable mental states required to commit the offense.

*Id*.

Torres raised the issue of Becky's credibility in his opening statement and repeated the same in his closing argument. In both, Torres pointed out the discrepancies and inconsistencies in the statements made by Becky to the outcry witness, the SANE examiner, and the forensic interviewer, as well as in her testimony at trial.

Accordingly, on this record, we cannot conclude that the alleged charge error affected the very basis of the case, deprived Torres of a valuable right, vitally affected Torres's defensive theory, or made a case for conviction clearly and significantly more persuasive. *See Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of

'intentionally' and 'knowingly.'"); *see also Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) ("[T]he intent of Jones in touching B.S.S., while it was part of the State's required proof, was not a contested issue and consequently Jones could not be egregiously harmed by the definition of the intentional and knowing state of mind."). We overrule Torres's fourth issue.

### *Conclusion*

Having overruled all of Torres's issues on appeal, we affirm the judgments of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
        Justice Neill, and
        Justice Johnson
Affirmed
Opinion delivered and filed May 26, 2021
Do not publish
[CRPM]

